IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL R. GLENN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-0685-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION
REVERSING COMMISSIONER'S FINAL DECISION DENYING BENEFITS
AND REMANDING FOR CALCULATION AND AWARD OF BENEFITS

Pending is Plaintiff's appeal from the Commissioner's final decision denying his claim for benefits. After reviewing the Record, the Court concludes there is not substantial evidence in the Record as a whole to support the denial. To the contrary, substantial evidence demonstrates Plaintiff became disabled as of July 22, 2005. The Commissioner's final decision is reversed, and the case is remanded for a calculation and award of benefits as of that date.

Plaintiff was born in February 1957. He enlisted in the Coast Guard and was trained as an operations specialist. In 1990 he began work as a systems analyst and computer consultant, and continued working in that field until some time in late 2001. He stopped working at his job due to a back injury and depression. R. at 566. He continued looking for work, R. at 590, but in May 2003 filed the instant application for benefits, alleging he became disabled in 2001.

The ALJ's findings regarding Plaintiff's exertional limitations are not challenged. The ALJ concluded Plaintiff could lift, push, pull or carry up to ten pounds frequently and twenty pounds occasionally, stand or walk for two hours a day, sit for six hours a day, and could not work above shoulder level or repetitively reach with either arm. R. at 27.

These physical limitations alone were enough to preclude Plaintiff from returning to his past work.  R. at 616.

The critical issue on appeal involves the ALJ's assessment of Plaintiff's mental and emotional condition.  Plaintiff was seen by both a psychiatrist – Dr. William McKnelly – and a psychologist – Dr. Daryl Richey – at the Veterans Hospital.  On most occasions, when he had an appointment with one he had an appointment with the other, but information relevant to this case was not contained in the records of every such visit.

In December 2001 Plaintiff sought medication for depression; he had been receiving medication from a private doctor, but now that he was no longer working he could not afford to see that doctor.  His GAF was determined to be 70.  R. at 2400-44.  In early March 2002, Plaintiff saw Dr. McKnelly and recounted his long-standing depression, which was exacerbated by his lack of a job and resulting financial difficulties.  He relating having suicidal thoughts for over two years.  Dr. McKnelly arranged for Plaintiff to receive counseling from Dr. Richey.  R. at 239.  Plaintiff saw Dr. Richey in Mid-March, and his GAF was determined to be 60.  R. at 237.  In late April, Plaintiff told Dr. Richey that he was looking for a job and his mood had improved; and Dr. Richey determined Plaintiff's GAF was 70.  R. at 231-32.  In August 2002, Plaintiff told Dr. Richey he was "doing fine" and his next appointment was set for six months later.  R. at 230.

In the interim, in early February 2003, Plaintiff's girlfriend died in her sleep as a result of a drug overdose.  She apparently had been self-medicating for depression, and Plaintiff found her next to him when he woke.  Plaintiff saw Dr. Richey in early March, at which time he demonstrated "irritability" and difficulty dealing with his grief.  His GAF score was 65.  R. at 229.  Plaintiff participated in a counseling session with Dr. Richey over the phone on April 2, during which time he did not express any suicidal or homicidal thoughts and his insight and judgment were within normal limits.  R. at 227.

On April 28, 2003, Plaintiff told Dr. McKnelly he planned to apply for disability benefits.  He had discovered his late girlfriend had an extensive history of using morphine and demerol, and was also concerned about his financial condition.  Dr. McKnelly reported Plaintiff's GAF score was still 65.  R. at 223.  On May 29, Dr.

2

McKnelly wrote that Plaintiff "has become highly focused on [o]btaining social security disability 'on bases of lots of stress over the years, or maybe my bad back.' Explained I knew of no medical/psych indication that would support that effort." R. at 222. On June 16, Plaintiff expressed concerns to Dr. Richey about his depression, lack of concentration, memory problems, and blurred vision. R. at 390. On July 21, Plaintiff told Dr. McKnelly that his "biggest problem" was fighting for disability benefits. He also reported waking in the night and re-imagining his discovery of his dead girlfriend in bed and expressed concerns about his physical ailments and financial condition. R. at 389. Later that day, Plaintiff told Dr. Richey the same concerns he expressed to Dr. McKnelly. He also reported he was still in vocational rehabilitation but doubted he could find work due to his back pain and his lack of concentration. R. at 388.

On August 20, 2003, Plaintiff told Dr. Richey he had contemplated suicide but had no real intention of carrying out such an act. Plaintiff "was preoccupied with the notion that the only remedy for his depression is . . . to begin to receive income from Social Security or employment, to resolve his visual problems, and to have companionship for he [sic] and his son." Dr. Richey indicated Plaintiff was severely depressed and had difficulty adjusting to the "number of severe losses and stressors" he had experienced over the preceding years. A new GAF score was not provided; instead, Dr. Richey indicated his last score (65) was ascertained in April 2003. R. at 386-87. Plaintiff's depression appeared no better during his October appointment, where he expressed a multitude of concerns over matters both within and beyond his control. R. at 369. However, on December 22, Plaintiff's condition had improved. While he experienced near-daily memories of finding his dead girlfriend, the nightmares had stopped and he said he "was handling life better." R. at 365. Dr. McKnelly indicated Plaintiff's GAF was still 65.

In January 2004, Plaintiff seemed to have regressed. "He complained of financial strain, physical pain due to knee injury and surgery, lack of employment, problems with State Voc Rehab, restricted social outlets, the difficulties of parenting a toddler, U.S. Corporate contracting for jobs overseas, Government subsidy of big business." Dr. Richey discussed Plaintiff's need to constructively address matters

3

Case 4:07-cv-00685-ODS   Document 17   Filed 06/23/08   Page 3 of 7

within his control.  R. at 364.  On March 24, Plaintiff was depressed because his efforts to find work were unsuccessful and he had "little hope of getting work in his field of training."  R. at 362-63.  In April, Plaintiff reported the flashbacks of his discovery of his dead girlfriend had diminished.  He was still depressed, and indicated he was "strting a new direction" with his vocational program.  Later that day, Plaintiff called Dr. Richey to report that his brother had made an unsuccessful suicide attempt – which added to Plaintiff's depression.  R. at 361-62.

On May 27, Plaintiff told Dr. Richey he was "overwhelmed" by a variety of stressors.  Dr. Richey assessed Plaintiff as suffering from major depression and chronic grief.  A new GAF score was not prepared; instead, the score of 65 from December 2003 was recorded.  R. at 357.  In June, Plaintiff expressed a belief that finding a job would help his situation.  R. at 352-53, 347.  In October 2004 Plaintiff reported obtaining a temporary job from H&R Block during the tax season.  He continued to have dreams about his girlfriend.  "He continues to have suicidal ideation, but is convinced that he would not take his own life for fear that it would negatively impact his son to have had both parents suicide."  Dr. Richey's diagnosis of major depression remained, and the GAF results from December 2003 were reported.  R. at 344-45.  In December, Plaintiff told Dr. McKnelly that he lost the temporary job he thought he had because he could not read the computer screen.  He still had suicidal thoughts, but his son still prevented him from following through on such plans.  R. at 341-42.  He told Dr. Richey he thought he had "slight" improvement and Dr. Richey reported Plaintiff "indicated greater optimism than at any previous visit."  R. at 340.  On February 7, 2005, Plaintiff reported increased nightmares, depression, and irritability.  R. at 409.  He told Dr. McKnelly had transient suicidal thoughts at random times, but his son was his reason for carrying on.  R. at 408.  The GAF results from December 2003 was repeated once again.

On June 16, Plaintiff reported he was "unable to function" due to a combination of physical impairments, vision difficulties and depression.  Dr. McKnelly addressed Plaintiff's headaches and other physical maladies (except for his vision problems).  Dr. Richey assessed Plaintiff as suffering from "major depression, recurrent, moderate to severe."  He also indicated Plaintiff had "some difficulty in his focus and with linear

4

thought in this visit. His condition appears to have declined since our last appointment in February of this year. My opinion is that his mental status is, indeed, impairing him significantly in his attempts to function well enough to find and keep employment." Dr. Richey also expressed his intention to perform another psychological assessment to update the one done in December 2003. R. at 499-500. The assessment was performed on July 22. The report indicates Plaintiff "tended to overreport problems, which suggests either an exaggeration of complaints and problems, or an extremely negative evaluation of himself and his life (i.e. a cry for help)." Nonetheless, the report also concludes Plaintiff "is experiencing significant depression and anxiety [and] is likely experiencing significant distress and severe impairment in functioning." His GAF score was 45, and he was assessed, *inter alia*, with recurrent major depressive disorder and generalized anxiety disorder. R. at 488-91. On August 12, Dr. Richey wrote the following:

> Mr. Glenn appears to be experiencing significant distress that is impacting his ability to perform normal role expectations such as maintaining employment.
>
> Mr. Glenn's impairment in occupational functioning is due to severe recurrent major depressive disorder and generalized anxiety disorder. His condition seems to be chronic as indicated by psychological testing performed both on July 5, 2005 and in 1987. Based on my treatment of this patient over the past three years I believe his prognosis for employment is poor. He has been unemployed since I began seeing him in March 2003 due to his depression and anxiety. I believe his unemployability to be chronic and due to his psychiatric condition.

R. at 518.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this

standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

As stated earlier, there is no issue raised with regard to the ALJ's findings with respect to Plaintiff's physical limitations. There is also substantial evidence in the record as a whole to support the ALJ's findings with regard to Plaintiff's mental/emotional condition prior to July 2005. Until that time, Plaintiff himself believed he could work (albeit not in the field he was trained in), and both Dr. McKnelly and Dr. Richey indicated their belief Plaintiff could work and encouraged him to do so.

It would seem, however, that the medical records describe a deterioration in Plaintiff's condition that culminated in July 2005. The ALJ found otherwise for a variety of reasons. First, he noted that Dr. McKnelly "is on record as stating that he knows of no medical or psychological indication that would support a finding that the claimant is disabled and unable to work." R. at 26. While true, this statement was made in May 2003 and cannot be evidence about Plaintiff's condition in July 2005. He also concluded Dr. Richey's opinions were "not consistent with the evidence in the record as a whole, and are on an issue reserved to the Commissioner." R. at 26. The Record reveals nothing that contradicts Dr. Richey's opinions about Plaintiff's deterioration of condition (or, for that matter, anything else). Moreover, Dr. Richey did not merely declare "Plaintiff cannot work;" while he indicated Plaintiff could not work, he also described Plaintiff's limitations in a manner that allowed the Vocational Expert to testify that Plaintiff could not work. R. at 618-620. Finally, the ALJ found Plaintiff's daily activities – most notably taking care of his son – demonstrated he was not disabled. R. at 26. However, there is no evidence to demonstrate Plaintiff's daily activities are

6

inconsistent with a finding of disability, and to the contrary the Record demonstrates Plaintiff does not engage in the full range of child-rearing activities.  R. at 572-74.[1]

Dr. Richey was Plaintiff's treating psychologist, and had been treating him for approximately three years.  When such an individual declares his patient's condition has "declined," that assessment is entitled to deference.  The Record in this case, considered as a whole, leads to only one conclusion: that Plaintiff is a person with long-standing mental and emotional problems who was able to work for a long period of time, but a combination of events (including the deaths and near-deaths of family and loved ones) caused his condition to deteriorate until, in July 2005, he was not able to work.  The Commissioner's final decision denying benefits is reversed, and the case is remanded with instructions that the Commissioner calculate and award Plaintiff benefits as of July 22, 2005.

IT IS SO ORDERED.

DATE: June 23, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

[1] A medical expert testified and was extremely critical of Dr. Richey's conclusions. However, the medical expert was not an expert in the area of mental health and some of his criticisms (such as the insinuation that some of the conclusions were offered by a graduate student and not Dr. Richey) were not supported by the Record.  In any event, the ALJ did not overtly rely on the medical expert's opinion of Dr. Richey's opinions, so there is no need to delve into this matter further.